**\*E-FILED 9/13/06\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSANNA SOTELO, | NO. C -05-02238 RS |
| Plaintiff, | **ORDER DENYING MOTION TO QUASH SUBPOENA** |
| v. | |
| OLD REPUBLIC LIFE INSURANCE, ET AL., | |
| Defendants. | |

## I.  INTRODUCTION

In this breach of contract and bad faith claim against Old Republic Life Insurance, plaintiff Susanna Sotelo has subpoenaed documents from Swiss Re Life and Health America, Inc. ("Swiss Re"), a third party that provided re-insurance to Old Republic in connection with the insurance policy at issue. Old Republic moves to quash the subpoena on both procedural and substantive grounds.

The motion was fully briefed and was heard on September 13, 2006. Based on all the papers filed to date and the arguments of counsel, the motion will be denied.

## II.  BACKGROUND

Sotelo and her husband, Salvador Sotelo, applied for life insurance policies in May of 2003. After both underwent medical examinations, they were issued policies on June 24, 2003. Salvador's policy was "reissued" on July 18, 2003, allegedly to correct an error in the calculation of the premium. Apparently at the same time as the policy was reissued, Old Republic reinsured a portion

1

of the death benefits with Swiss Re.[1]

On June 26, 2003, two days after his policy first issued, Salvador sought medical treatment for diarrhea he had been experiencing. His physician prescribed an over the counter treatment and sent him home. Salvador's symptoms persisted. On July 14, 2003, four days before his policy was "reissued," he was diagnosed as possibly having Crohn's disease, a diagnosis subsequently confirmed in November of 2003 during a colectomy. Although Crohn's disease is normally controllable through diet and medication, Salvador developed additional problems during hospitalization, and died in December of 2003.

Old Republic initially concluded that Salvador had *not* been guilty of concealment or material misrepresentation of his health condition, and approved payment of benefits under his policy. Old Republic, however, subsequently denied the claim, contending that the effective date of the policy was the July 18, 2003 date, and that Salvador concealed adverse changes in his health discovered prior to that time. This action followed.

### III. DISCUSSION

Pursuant to Rule 45 (c) (3) (A), a court may quash or modify a subpoena that "requires disclosure of privileged or other protected matter and no exception or waiver applies" or that "subjects a person to undue burden." Here, Old Republic enumerates five objections to the subpoena, although some of them overlap.[2]

1. Control of the Documents

Sotelo initially served the subpoena on Swiss Re's registered agent for service of process, CT Corp., in Los Angeles. As Sotelo's opposition recognizes, that subpoena was defective because CT Corp. is outside this district and more than 100 miles from the place of trial or production. See Fed. R. Civ. Proc. 45 (b) (2). Sotelo, however, also served the subpoena directly on the offices of Swiss

---

[1] "[R]einsurance is an insurer's effort to secure indemnification from another insurer against loss of or liability because of a risk assumed by the initial insurer under a contract between it and a third person. Reinsurance has been said to be the means by which an insurer can spread the loss incurred from an insured risk." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 139 F.R.D. 609, 611 (E.D. Penn. 1991).

[2] Also, although Old Republic lists "undue burden" as one of its bases for objection, it does not address it separately.

2

Re in San Francisco.[3] Old Republic nevertheless argues that the subpoena should be quashed because the responsive documents are located in its New York headquarters and therefore are not in the "control" of CT Corp. *or* its San Francisco office. Old Republic relies on an Eleventh Circuit case in which a Florida plaintiff sought to obtain documents from the U.S. Olympic Committee (a non-party based in Colorado) by serving its statutory agent for service of process in Florida (also CT Corp.). See *Ariel v. Jones*, 693 F.2d 1058 (11th Cir. 1982). The *Ariel* court held that the Florida district court did not abuse its discretion by quashing the subpoena, given that, among other things, the Olympic Committee had "minimal contacts" with Florida and maintained an agent for service of process there only because it was required by statute to have an agent in *every* state. 693 F.2d at 1060-61.

If the present motion arose only from the subpoena initially served on CT Corp. in Los Angeles, *Ariel* might be more instructive. Now, however, Sotelo has agreed to withdraw that subpoena, and the question is not whether the documents can be said to be in "control" of CT Corp., but whether they are within the "control" of Swiss Re's San Francisco office. There appears to be no dispute that Swiss Re has a substantial presence in this district and that it has conducted business here for decades under license from the California Department of Insurance. There is no reason not to treat the meaning of "control" in this context as it is treated in any ordinary case. A corporate entity with multiple offices generally must produce all responsive documents regardless of where the documents are physically located. To treat each office as if it had control only of the documents at that location would be unworkable. Accordingly, the fact that the documents may be located elsewhere is not a sufficient basis to quash the subpoena served on Swiss Re's San Francisco office.

2. Relevance

Although Rule 45 does not expressly refer to lack of "relevance" as a basis to quash or modify a subpoena, requiring a party to produce wholly irrelevant documents would be an "undue

---

[3] Sotelo's opposition suggests that the San Francisco office is operated by Swiss Reinsurance American Corporation, an "affiliate" of Swiss Re. Old Republic's papers, however, concede that the San Francisco office is an office of Swiss Re.

3

1  burden." Here, Old Republic argues in separate sections of its briefs that the materials sought are
2  both "not relevant" and " not reasonably calculated to lead to the discovery of admissible
3  evidence."[4] Old Republic cites cases in which courts found that matters relating to reinsurance had
4  too little potential relevance to be discoverable in litigation regarding the underlying insurance
5  policies. *See Rhone-Poulenc*, *supra*, 139 F.R.D. 609; *Potomac Electric Power Co. v. California
6  Union Ins. Co.*, 136 F.R.D. 1 (D.D.C. 1990). *Rhone-Poulenc* and *Potomac Electric*, however, both
7  involved coverage disputes where the central issue was the meaning of the policies' terms and
8  exclusions. In that context, the *Rhone-Poulenc* court explained: "the contract of insurance embodies
9  the exclusive mutual agreement of the parties . . . Therefore, discovery concerning reinsurance
10 agreements to which the plaintiffs were not parties would . . . not assist in the determining of the
11 mutual intent of the parties." 139 F.3d at 611 (internal citation omitted). Accordingly, the court
12 found that discovery regarding reinsurance matters should not be permitted until and unless "there
13 has been a finding by the District Court of ambiguity." *Id.* at 612.

*Rhone-Poulenc* expressly distinguished *National Union Fire Insurance v. Continental
15 Illinois Corp.*, 116 F.R.D. 78 (N.D.Ill., 1987), which held that communications between an insurer
16 and its reinsurers *were* discoverable in an action by the insurer to rescind the underlying policy
17 based on alleged material misrepresentations made by the insured. The *National Union* court
18 recognized that the communications between the insurer and the reinsurers were relevant within the
19 meaning of Rule 26 given the nature of the claims in the case. See 116 F.R.D. at 82-83.

The present case is much more similar to *National Union* than to either *Rhone-Poulenc* or
21 *Potomac Electric*. This is *not* a coverage dispute that turns on interpretation of the policy and the
22 parties' mutual intent; rather the issues here relate to why Old Republic concluded that there was a
23 basis to rescind the policy and whether that conclusion was justified. Existing discovery has
24 revealed that there were at least some communications and documents exchanged between Old
25 Republic and Swiss Re regarding that topic. The materials requested in the subpoena are relevant

---

[4] Under Rule 26 (b) (1) of the Federal Rules of Civil Procedure "relevant" discovery is defined to include discovery "reasonably calculated to lead to the discovery of admissible evidence." It is unclear why Old Republic treats the two phrases it uses separately.

4

and are discoverable, if not privileged or otherwise protected.

3. <u>Privilege</u>

Old Republic contends that the subpoena should be quashed because its language is so broad that responsive documents "may well include privileged information." Although the subpoena appears primarily directed at materials exchanged between Old Republic and Swiss Re, which would not immediately appear to be privileged, it is conceivable that Swiss Re possesses some responsive documents as to which it may legitimately assert a privilege. The remedy, however, is not to quash the subpoena, particularly where no showing has been made that privileged materials exist. Rather, Swiss Re must produce all non-privileged responsive documents and a privilege log with respect to any documents it withholds under a claim of privilege. *See* Fed. R. Civ. Proc. 45 (d) (2).[5]

## IV.  CONCLUSION

The motion to quash is denied. Within 20 days of the date of this order, Swiss Re shall produce all responsive non-privileged documents, and a privilege log identifying any documents withheld under a claim of privilege or other protection.

IT IS SO ORDERED.

Dated: September 13, 2006

RICHARD SEEBORG
United States Magistrate Judge

---

[5] Old Republic also appears to contend that the subpoena is overbroad simply because it is not limited in time. Since there is no reason to think that Swiss Re had dealings involving the Sotelos other than the transaction at issue, this contention lacks merit.

ORDER DENYING MOTION TO QUASH SUBPOENA
C -05-02238 RS

5

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Kelly K. Brar     kbrar@lordbissell.com, asuetsugu@lordbissell.com

Jeffrey Stephen Kravitz     jkravitz@silverfreedman.com

Susan D. Pelmulder     spelmulder@hotmail.com

Gary S. Rose , Esq     gsroselaw@hotmail.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

| | |
|---|---|
| **Dated: 9/13/06** | **Chambers of Judge Richard Seeborg** |
| | **By:      /s/ BAK** |

ORDER DENYING MOTION TO QUASH SUBPOENA
C -05-02238 RS

6